William Sack
PA Attorney Id. No. 325863
FIREARMS POLICY COALITION
5550 Painted Mirage
STE 320
Las Vegas, NV 89149
P: (916) 596-3492
E: wsack@fpclaw.org

John W. Dillon (SBN 296788)
jdillon@dillonlawgp.com
**DILLON LAW GROUP APC**
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150
*App. for Pro Hac Vice Forthcoming*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KNIFE RIGHTS, INC;** | : | Civil Rights Complaint |
| **KEITH FETSURKA; AND** | : | 42 U.S.C. § 1983 |
| **SCOTT MELE.** | : | |
| Plaintiffs, | : | Case No. - _____ |
|               Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DANIELLE OUTLAW,** | : | |
|   Philadelphia Police Commissioner; | : | |
|   **and,** | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **PENNSYLVANIA,** | : | |
| | : | |
|               Defendants. | : | |

## COMPLAINT

COME NOW Plaintiffs Knife Rights, Inc., Keith Fetsurka, and Scott Mele, on behalf of themselves and those similarly situated, by and through their attorneys, John W. Dillon of Dillon Law Group APC and William Sack of Firearms Policy Coalition, Inc., and complain of Defendants Danielle Outlaw and City of Philadelphia, Pennsylvania as follows:

## INTRODUCTION

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. When the People, by enacting that amendment, enshrined in their Nation's fundamental charter the right to "carry weapons in case of confrontation" for the "core lawful purpose of self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 592, 630 (2008), they did not mean to leave the freedom to exercise that right at the mercy of the very government officials whose hands they sought to bind. No, "[t]he very enumeration of the right takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id*.

2. In *District of Columbia v. Heller*, the U.S. Supreme Court held that to "bear arms" includes the carry of arms "in a pocket, for the purpose ... of being

armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. 570 (2008) at 584.

3. Plaintiffs Fetsurka and Mele and all typical, law-abiding citizens, have a fundamental, constitutionally guaranteed right to carry knives on their person, outside their homes, while in public and in motor vehicles, for lawful purposes including immediate self-defense.

4. But Defendants City of Philadelphia, Pennsylvania ("Philadelphia") and Philadelphia Police Commissioner Danielle Outlaw (collectively "Philadelphia Defendants") have banned the constitutionally protected conduct of possessing and carrying knives for all lawful purposes, including self-defense.

5. Defendants' laws, regulations, policies, and enforcement practices thus violate the right to keep and bear arms expressly protected under the Second and Fourteenth Amendments to the United States Constitution.

## **PARTIES**

6. Plaintiff Keith Fetsurka ("Fetsurka") is a natural person, 32 years of age, a citizen of Philadelphia, Pennsylvania and the United States, and a member of Knife Rights, Inc.

7. Plaintiff Scott Mele ("Mele") is a natural person, 64 years of age, a citizen of Langhorne, Pennsylvania and the United States, and a member of Knife

Rights, Inc. Plaintiff Mele frequently travels through and into the City of Philadelphia.

8.    Plaintiff Knife Rights, Inc. ("KRI") is a 501(c)(4) non-profit organization incorporated under the laws of Arizona, with a place of business in Gilbert, Arizona. KRI promotes legislative and legal action, as well as research, publishing information, and advocacy, in support of individuals' right and ability to keep and bear knives and tools. KRI's members reside both within and outside Pennsylvania. KRI represents its members and supporters—who include knife owners and carriers, prospective knife owners and carriers, knifemakers, and others—and brings this action on behalf of itself, its members, including the named Plaintiffs herein, and supporters who possess all the indicia of membership. KRI's members have been adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein.

9.    Defendant    Philadelphia    Police    Commissioner    Danielle    Outlaw ("Commissioner Outlaw" or "Outlaw") is the head and Commissioner of Defendant City of Philadelphia, Pennsylvania's Police Department ("PPD"). As Commissioner of the PPD, Commissioner Outlaw formulates, enacts, and is currently enforcing the City's criminal laws, policies and practices. Defendant Outlaw has and continues to enforce laws and policies denying

law-abiding adult citizens in Philadelphia their fundamental, individual right to bear arms. Defendant Outlaw is sued in her official capacity.

10. Defendant City of Philadelphia, Pennsylvania is a municipal corporation incorporated under the laws of the Commonwealth of Pennsylvania. Defendant City is sued under 42 U.S.C. § 1983 because it has enacted and is enforcing laws and policies that deprive, under color of law, Plaintiffs' and similarly situated persons' federal constitutional rights, privileges, and immunities secured by the Constitution.

11. The City of Philadelphia Police Department is an agency of the City that is not amenable to suit in its own name.

## **JURISDICTION AND VENUE**

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

13. This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees pursuant to 42 U.S.C. § 1988.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

## STATEMENT OF FACTS

### *The Laws, Policies, And Enforcement Actions Affecting Plaintiffs*

15. The foregoing paragraphs are incorporated herein as if set forth in full.

16. Defendant Philadelphia's Code provides: "No person shall use or possess any cutting weapon upon the public streets or upon any public property at any time." Phila. Code § 10-820(2).

17. The Code defines a "cutting weapon" as "[a]ny knife or other cutting instrument which can be used as a weapon that has a cutting edge similar to that of a knife." Phila. Code § 10-820(1). And while "No tool or instrument commonly or ordinarily used in a trade, profession or calling shall be considered a cutting weapon while actually being used in the active exercise of that trade, profession or calling," id., Phila. Code § 10-820(2) does not exempt typical, law-abiding individuals from carrying cutting weapons for lawful purposes, including self-defense.

18. "The penalty for violation of [Phila. Code § 10-820(2)] shall be a fine of not less than three hundred dollars ($300) and imprisonment of not less than ninety days." Phila. Code § 10-820(3).

19.   Philadelphia's Code further provides that "[n]o person shall knowingly possess a weapon or knowingly cause a weapon to be present, whether openly or concealed, … within one hundred (100) feet of, … any elementary or secondary private school licensed by the Pennsylvania Department of Education or any elementary or secondary parochial school." Phila. Code § 10-833(2).

20.   For the purposes of Phila. Code § 10-833(2), a "weapon" "shall include, but not be limited to, any … knife, cutting instrument, cutting tool, … and any other tool, instrument or implement capable of inflicting serious bodily injury."

21.   No exemptions to the prohibition under Phila. Code § 10-833(2) applies to typical, law-abiding citizens carrying knifes for immediate self-defense in public "within one hundred (100) feet of" schools.

### *Facts Specific to Plaintiff Kieth Fetsurka*

22.   The foregoing paragraphs are incorporated herein as if set forth in full.

23.   Plaintiff Fetsurka is not disqualified from exercising Second Amendment Rights.

24.   Plaintiff Fetsurka:

a.   Is a United States citizen;

b.   Is 32 years old;

c.     Is not under indictment;

d.     Has never been convicted of a felony or misdemeanor crime of domestic violence;

e.     Has never been convicted of a crime punishable by more than one (1) year;

f.     Is not a fugitive from justice;

g.     Is not an unlawful user of, or addicted to, any controlled substance;

h.     Has not been adjudicated a mental defective or been committed to a mental institution;

i.     Has not been discharged from the Armed Forces under dishonorable conditions;

j.     Has never renounced his citizenship; and,

k.     Is not the subject of a restraining order relating to an intimate partner.

25.   Plaintiff Fetsurka intends and desires to lawfully carry a common knife for self-defense, such as a folding and/or fixed blade knife, in public, for lawful purposes including self-defense.

### *Facts Specific to Plaintiff Scott Mele*

26.   The foregoing paragraphs are incorporated herein as if set forth in full.

27.   Plaintiff Mele is not disqualified from exercising Second Amendment Rights.

28.   Plaintiff Mele:

a.  Is a United States citizen;

b.  Is 64 years old;

c.  Is not under indictment;

d.  Has never been convicted of a felony or misdemeanor crime of domestic violence;

e.  Has never been convicted of a crime punishable by more than one (1) year;

f.  Is not a fugitive from justice;

g.  Is not an unlawful user of, or addicted to, any controlled substance;

h.  Has not been adjudicated a mental defective or been committed to a mental institution;

i.  Has not been discharged from the Armed Forces under dishonorable conditions;

j.  Has never renounced his citizenship; and,

k.  Is not the subject of a restraining order relating to an intimate partner.

29.  Plaintiff Mele intends and desires to lawfully carry a common knife for self-defense, such as a Spyderco Co-Pilot folding knife having a blade of approximately 2 inches and/or a Tekna Knifelite having a blade of approximately 1.25 inches on his person, in public, for lawful purposes including self-defense.

### The Controlling Constitutional Text, and the History and Tradition that Informs It

30. The United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II.

31. The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

32. The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

33. "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

34. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634-35.

35. In *Heller*, the Supreme Court also held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of

confrontation." *Heller*, 554 U.S. at 592.

36.   And indeed, the Supreme Court made clear in *New York State Rifle & Pistol Association v. Bruen* that the Second and Fourteenth Amendments protect the right to acquire, possess, and carry arms for self-defense and all other lawful purposes—inside *and* outside the home. 142 S. Ct. 2111

37.   This is " 'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights,' " *Heller*, 554 U.S. at 594 (quoting A Journal of the Times: Mar. 17, NEW YORK JOURNAL, Supp. 1, Apr. 13, 1769).

38.   And the meaning of the right during the founding-era—which the high court has commanded must still control today—"unambiguously" "refer[red] to the carrying of weapons outside of an organized militia." *Id.* at 584. It is clear that, "[a]t the time of the founding, as now, to 'bear' meant to "carry." *Id.*

39.   "Knives are among the arms protected by the Second Amendment. They easily fit with the Supreme Court's *Heller* definition of protected arms, being usable for self-defense, and typically owned by law-abiding citizens for legitimate purposes." Kopel, David B. and Cramer, Clayton E. and Olson, Joseph Edward, *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM vol. 47 (pages 167-215 (Fall 2013)).

40.   *Heller* and *Bruen* mandate that the constitutionality of restrictions on the rights enshrined in the Second Amendment must be scrutinized under the

text of the Constitution itself, looking to the history and tradition to inform its original public meaning.

41. Knives and "other cutting instruments" are "arms" under the plain text of the Second Amendment. *Bruen*, 142 S.Ct. at 2132. Plaintiffs' desire to keep and bear these arms for self-defense and other lawful purposes. According to the Supreme Court in *Bruen*, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify an arm regulation, "the government must demonstrate that the regulation is consistent with the Nation's historical tradition of [arms] regulation." *Bruen*, 142 S.Ct. at 2126, 2130. Defendants cannot meet their burden.

42. *Bruen also* confirmed that *Heller* already conducted the relevant historical analysis for determining whether a particular arm falls within the Second Amendment's protection. In order for a ban of an arm to be consistent with this Nation's history of firearm regulation, the government must demonstrate that the banned arm is both "dangerous and unusual." *Id*. at 2143. Arms that are in "common use today" simply cannot be banned. *Id.*

43. Knives, bladed weapons, and tools, such as those Defendants' laws, policies, and practices prohibit Plaintiffs and others like them from carrying in public, are not dangerous *and* unusual, and are commonly used for lawful purposes

throughout the United Stated.

44.  The high court has directed the analysis be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731). We look to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

45.  The U.S. Supreme Court in *Heller* held that to "bear arms" means to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." *District of Columbia et al. v. Heller*, 554 U.S. 570, 584 (2008) (quoting *Muscarello v. United States*, 524 U.S. 125 at 143) (internal quotations omitted).

46.  Throughout American history, arms carrying was a right as to all peaceable citizens. Sometimes, it was even a duty. *See e.g.*, David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495, 573–577, 587 (2019) (listing statutes requiring arms carrying by

members of the general public to travel, work in the fields, work on roads and bridges, attend church, and attend court).

47. Historically, under the Constitution's relevant history and tradition, only dangerous persons have historically been acceptably deprived of the right to bear arms. Peaceable persons have always been free to carry arms for self-defense and other lawful purposes. *See generally* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249 (2020).

48. The tradition of disarming violent and dangerous persons was practiced from medieval England through mid-20th century America, but there is no tradition of disarming nonviolent people like Plaintiffs Fetsurka, and Mele, and those similarly situated. *Id.*

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**
**(*Plaintiffs v. Defendants*)**

49. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

50. There is an actual and present controversy between the parties.

51. 42 U.S.C. § 1983 prohibits state actors from depriving a person of federal constitutional rights under color of state law.

52. There can be no dispute over the proper approach to evaluating Second Amendment claims. First, the Court must determine whether "the Second Amendment's plain text covers an individual's conduct" that is being restricted by a challenged law or policy. *Bruen*, 142 S. Ct. at 2129 – 30. Second, if the answer is yes, the conduct is presumptively protected, and the burden then falls to the government to justify the challenged restriction by "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation*." Id*. at 2130. If the government cannot make this demonstration, the restriction is unconstitutional, full stop. No interest-balancing or levels-of-scrutiny analysis can or should be conducted. *Id*. at 2127.

53. As detailed above, nothing in the text itself nor the applicable history or tradition of the Second or Fourteenth Amendments supports the infringement and burdens that the Defendants' laws and policies impose on the ability of law-abiding citizens, like Plaintiffs and those similarly situated, to otherwise lawfully and peaceably carry knives for all lawful purposes, including self-defense in case of confrontation, in the exercise of their fundamental right to bear arms.

54. Defendants' laws and enforcement of them amounts to a total ban on Plaintiffs, Plaintiffs' members and supporters, and those who are similarly

situated right to bear knives as common tools on their person in public for all lawful purposes, including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

55. The Second Amendment states that "the right of the people to keep and bear arms shall not be infringed."

56. The Supreme Court has held that the right to keep and bear arms is a fundamental right, the core of which is for self-defense. *Heller*, 554 U.S. at 581.

57. In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

58. In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *Id*. at 806 (Thomas, J., concurring).

59. The Supreme Court has made clear the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms as among those fundamental rights *necessary* (i.e., essential) to our system of ordered liberty, *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010), and as a privilege and immunity of citizenship, *id*. at 805 (Thomas, J., concurring).

60.   The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S., at 780, and it cannot "be singled out for special—and specially unfavorable—treatment." *Id.* at 778–79. See also *Bruen* 142 S.Ct. at 2156.

61.   The Supreme Court has held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *Heller*, 554 U.S. 570, 582.

62.   The knives Plaintiffs wish to carry in public, in Philadelphia, for lawful purposes, are "instruments that constitute bearable arms" protected under the Second and Fourteenth Amendments.

63.   The Defendants' laws, policies, enforcement practices, and customs challenged herein that individually and collectively violate the constitutional right to bear arms have no historical pedigree.

64.   Defendants' laws, policies, and enforcement practices prevent law-abiding individuals from carrying knives on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces.

65.   By preventing legally eligible adults, like and including Plaintiffs, Plaintiffs' members and supporters, and others similarly situated to them, from bearing arms as they are constitutionally entitled, Defendants have violated the

Plaintiffs' rights protected under the Second and Fourteenth Amendments and denied them those arms for the purpose of immediate self-defense and all lawful purposes.

66. Plaintiffs and other adults like them have been and will continue to be subject to the Defendants' laws, policies, and enforcement practices which deny access to, exercise of, and violates their right to bear arms, including but not limited to the right to immediate self-defense in case of confrontation.

67. As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly situated Philadelphia residents and visitors who knowingly or unknowingly are subject to the Defendants' laws, regulations, policies, and enforcement practices at issue.

68. Defendants have and will continue to enforce their laws, policies, practices, and customs against Plaintiffs, Plaintiffs' members and supporters and similarly situated persons.

69. Plaintiffs reasonably fear that Defendants will enforce against them their laws and Defendants' related enforcement policies, practices, and customs.

70. Plaintiffs thus seek declaratory, preliminary, and permanent injunctive relief, as this action involves matters of substantial public interest.

71.   Plaintiffs Fetsurka, and Mele are law-abiding citizens who are not disqualified from exercising their rights under the Second Amendment.

72.   Plaintiffs Fetsurka and Mele wish to carry knives on their person, in public, in and around Philadelphia, for lawful purposes.

73.   Plaintiffs Fetsurka, Mele, and Plaintiff KRI's members and supporters, and those similarly situated to them, wish to exercise their fundamental, individual right to bear arms in public, including but not limited to within 100 feet of schools, and would, but for Defendants' laws, policies, and enforcement practices and reasonable fear of enforcement, including but not limited to arrest, prosecution, and fines under Phila. Code §§ 10-830 and 10-833.

74.   Defendants, and their PPD, have and are currently enforcing laws and policies denying law-abiding adult citizens in Philadelphia their fundamental, individual right to bear bladed arms for lawful purposes including self-defense.

75.   Plaintiffs Fetsurka, Mele, and Plaintiff KRI's members and supporters, and those similarly situated to them, wish and intend to, but have abstained from, carrying bladed arms on their person, in public and in motor vehicles, in case of confrontation, and for the purpose of immediate self-defense, for fear of arrest, prosecution, incarceration, and/or fine under Defendants' laws and their enforcement of them.

76.   Plaintiffs Fetsurka and Mele reasonably fear arrest and prosecution for exercising their rights by carrying bladed arms on their person in public in Philadelphia because of the Defendants' laws, policies, practices, and active enforcement of them.

77.   Defendants, and their PPD, have and continue to enforce the challenged laws, policies, customs, and practices against Plaintiffs and are in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs and others like them.

78.   Plaintiff KRI has an associational interest in defending and asserting the rights of its members and similarly situated members of the public against Defendants' laws, policies, and enforcement practices.

79.   Defendants' laws, policies, and enforcement practices target and impact normal, legally eligible adults who are constitutionally entitled to bear, carry, and lawfully use arms for all lawful purposes, including self-defense, in public.

80.   Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the Commonwealth of Pennsylvania, including Plaintiffs Fetsurka and Mele all similarly situated members and supporters of Plaintiff KRI, and all other

similarly situated individuals, through their enforcement and implementation of Philadelphia's laws and regulations.

81. Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the Commonwealth of Pennsylvania, including Plaintiffs Fetsurka, Mele, and KRI, and all other similarly situated individuals, through their enactment and enforcement of the City's laws, policies, practices, and customs, including but not limited to the criminal laws banning carry of bladed arms which have denied, and will continue to deny and prevent by criminal sanction, the exercise of the fundamental right to bear arms in public for lawful purposes, including but not limited to self-defense and in case of confrontation unless and until redressed through the relief Plaintiffs seek herein.

82. Defendants' laws, policies, practices, customs, and ongoing enforcement of them violates the rights of Plaintiffs Fetsurka, Mele, and all similarly situated members and supporters of Plaintiff KRI, and all other similarly situated individuals, are thus causing injury and damage actionable under 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant, as follows:

a)   A declaratory judgment that Defendants' laws, policies, and enforcement practices prohibiting the carry of bladed arms in public for lawful purposes including are unconstitutional under the Second and Fourteenth Amendments to the United States Constitution;

b)   An order temporarily, preliminary, and permanently restraining and enjoining Defendants and their officers, agents, servants, employees, all persons in concert or participation with them, and all who have notice of the injunction, from enforcing their laws, policies, and enforcement practices prohibiting the carry of bladed arms in public;

c)   Nominal damages against Defendant Outlaw;

d)   All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable; and,

e)   Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted this 5th day of May 2023.

Firearms Policy Coalition, Inc.


*/s/ William Sack*
William Sack


DILLON LAW GROUP, APC


*/s/ John W. Dillon*
John W. Dillon
*Pro Hac Vice Application Forthcoming*


Attorneys for Plaintiffs